## Appeal of GARDNER PRINTING CO.

Docket No. 5061.   Submitted December 10, 1925.   Decided April 21, 1926.

1. VALUE OF NEWS PUBLICATIONS.—The original cost, plus that part of expense of building up and developing a news publication circulation structure capitalized, *held*, upon the evidence, to be the measure of the value of the investment when paid in to a corporation in exchange for stock.

2. GAINS FROM SALES.—Amounts received from the sale of assets, the cost of which has been either charged to expense or fully recovered by depreciation, are income.

*D. H. Morgan, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies for the fiscal years ended April 30, 1919, and April 30, 1920, in the amounts of $5,410.22 and $2,010.64, respectively. The petitioner alleges errors as follows:

(1) That the Commissioner improperly eliminated from invested capital the amount of $59,000, the par value of stock issued by the taxpayer as payment for a so-called investment account acquired from a predecessor corporation.

(2) That the Commissioner added to gross income in each year items of alleged gains predicated upon the sale of printing presses and other equipment.

FINDINGS OF FACT.

The taxpayer is a corporation organized in May, 1907, with an authorized capital stock of $150,000, of which $105,000 was common stock and $45,000 was preferred stock, and at the time of its organization took over the assets of the Gardner Publishing Co. and the Cleveland Printing Co., predecessor corporations.

In or about the month of April, 1905, one G. H. Gardner purchased a trade newspaper known as the " Pattern Maker," for which he paid $20,000 in cash. In the following month of May, 1905, he caused to be organized a corporation known as the Gardner Publishing Co., and thereupon exchanged the said trade paper for $20,000 par value of the capital stock of said company, which continued the publication of said trade paper and sought to develop the field covered by said paper and enlarge its scope. In this effort it caused the name of the paper to be changed to " Woodcraft " and that name to be trade-marked. It enlarged its office, purchasing additional furniture and fixtures; put on more solicitors for subscriptions and for advertising; obtained more useful editorial material and added many other features, with a view of making the paper cover the entire

woodworking field. During the following two years the operating expenses amounted to $50,538.82. During this two-year period the " Woodcraft " publication acquired a recognized standing as a trade journal representing the entire woodworking industry, and at the end of this two-year period the sum of the original cost of the " Pattern Maker," plus the operating expenses, was as follows:

| | |
|---|---:|
| Original purchase " Pattern Maker " | $20, 000.00 |
| Operating expenses, May 1, 1905, to Apr. 30, 1906 | 26, 097. 49 |
| Operating expenses, May 1, 1906, to Apr. 30, 1907 | 24, 441. 33 |
| Total | 70, 538. 82 |

Included in this total are the costs of such physical assets as office equipment, estimated not to exceed $5,000.

On May 14, 1907, the resources and liabilities of the Gardner Publishing Co. were found by its books to be as follows:

BALANCE SHEET MAY 14, 1907.

| Assets. | | Liabilities. | |
|---|---:|---|---:|
| Investment | $32, 933. 45 | G. H. Gardner | $4, 869. 53 |
| Bills receivable | 1, 432. 75 | Bills payable | 5, 000. 00 |
| Accounts receivable | 5, 080. 46 | Capital stock | 34, 400. 00 |
| Profit and loss | 4, 822. 87 | | 44, 269. 53 |
| | 44, 269. 53 | | |

In May, 1907, it was proposed to merge the business of the Gardner Publishing Co. and the business of the Cleveland Printing Co. into one organization, and the taxpayer corporation was then organized and took over the going businesses of the two companies. On May 15, 1907, the taxpayer issued all of its preferred stock, $45,000, and $79,000 of its common stock, in exchange for the properties and the businesses of said two companies, as follows:

Date issued.

| | |
|---|---:|
| May 15, 1907. Issued for the machinery, equipment, and fixtures of the Cleveland Printing Co. and Gardner Publishing Co | $65, 000 |
| May 15, 1907. Issued for the investment account of Gardner Publishing Co | 59, 000 |

Thereupon and thereafter, on the following dates, taxpayer issued the balance of its authorized common stock, for which it received cash at par as follows:

| | |
|---|---:|
| May 15, 1907. Common stock issued for cash | 19, 800 |
| Jan. 3, 1910. Common stock issued for cash | 2, 500 |
| Jan. 17, 1910. Common stock issued for cash | 1, 500 |
| Feb. 25, 1910. Common stock issued for cash | 2, 000 |
| June 23, 1910. Common stock issued for cash | 200 |
| Total authorized issue of capital stock | 150, 000 |

Of the $19,800 par value of stock issued for the same amount of cash on May, 15, 1907, a small number of shares were purchased by one Oliphant, and another small number of shares were purchased by one Franck, who were, respectively, treasurer and general manager of the business, and one block of 100 shares, $10,000, was purchased and paid for by one F. E. Drury. Oliphant purchased other shares at par for cash at later dates.

The taxpayer continued the publication of "Woodcraft," and also established another trade paper known as "Castings," which was intended to cater to the foundry business, and continued these publications until the year 1913, when there was organized a corporation known as the Mechanical Publishing Co., and the taxpayer transferred to the latter company the publications known as "Woodcraft" and "Castings" in exchange for $75,000 par value of the stock of the latter company; but in the following year the taxpayer reacquired both of said publications in exchange for the same $75,000 par value of the stock of the Mechanical Publishing Co. The taxpayer, however, had continued as a going concern and upon the reacquisition of the publications its capital account was not changed or modified.

In the year 1912 the taxpayer purchased a two-color press at a cost of $9,600, and added to this press a feeder at a cost of $1,750. On December 9, 1918, this press and feeder were sold for $8,000. At the hearing it was stipulated by counsel for the parties that the gain derived from this sale, after taking into consideration the accrued depreciation, was $2,650.

During the fiscal year ended April 30, 1919, the taxpayer received $1,500 from the sale of stock of the Nesbit Service Co. The cost of this stock had been in prior years charged to operating expenses, and the Commissioner added the $1,500 so received to gross income for the fiscal year ended April 30, 1919.

During the fiscal year ended April 30, 1920, the taxpayer sold an embossing press for $1,100, and another small machine for $150. The total cost of each of these items of equipment had been in prior years fully recovered by depreciation, and the Commissioner added the amounts received from the sale to gross income for the fiscal year ended April 30, 1920.

### OPINION.

TRUSSELL: Perhaps the most important asset of a news publishing business is its reading and advertising clientele. The advertising clientele is built up on the basis of an approved subscription list, and, therefore, in the parlance of the publishers' business, this asset is known as the circulation structure. When a publishing business is started a considerable portion of its capital goes into

the development and upbuilding of this circulation structure, in much the same manner that a manufacturing business puts its capital into factory buildings and machinery which constitute its plant. So the circulation structure of a news publishing plant represents a considerable portion of the capital investment. This circulation structure is evidenced by subscription lists and book accounts which, in a well regulated publishing business, are periodically verified and audited in a manner not unlike the periodical inventorying of plant and equipment of other businesses. And to the same extent that an inventory of buildings and machinery represents capital for a manufacturing business, so a verified and audited circulation structure must represent capital of a publishing business.

In the instant case we are called upon to determine the cash or market value of a trade newspaper as of May 15, 1907, when the same was exchanged for stock of a corporation. More than 18 years have passed since the time when the facts and circumstances controlling the value of this property were matters of current interest. The bookkeeping and accounting of this business at that time were apparently crude; some of the records have been lost; and some of the actors who took part in building this newspaper are not now present to testify concerning the facts and things which enter into the computation of values.

In this situation the Commissioner disregards any evidence of value whatsoever, while the petitioner argues that we should accept its proposition that the value was equal to the par of the stock issued for the asset. Both of these positions seem to be equally untenable. The Board can not properly accept the fact that an exchange of property for stock is proof of value, without other evidence; neither can it refuse to consider such evidence as has been produced in support of the values claimed.

An examination of the facts discloses that, during the two years of the operation of the Gardner Publishing Co., $32,933.45 of its cash capital had gone into the purchase and development of the " Pattern Maker," later known as " Woodcraft " publication; that during those two years some part of the $50,000 of operating expenses must be attributed to the work of procuring and building up subscription lists and advertising patronage, and at the end of that period there was an operating deficit of $4,822.87. Thus, it is apparent that on May 15, 1907, the " Woodcraft " publication and its circulation structure had cost its promoters a sum equal to the so-called investment account, plus the operating deficit and that unsegregated portion of the expenses which could be properly attributed to development cost. We are not impressed with the taxpayer's argument that the value of a publication should be taken to be the amount which has actually been expended in develop-

ing it. A newspaper circulation structure is an asset which must be continually supported by such advertising and soliciting as will result in constantly bringing in new subscribers and new advertising patrons to take the place of those who, in the regular course of business, are constantly dropping off. In this situation, it appears that the best estimate of the value of this publication which can now be arrived at is the estimate which its owners and promoters placed upon it and at which they carried it upon their books of account on May 15, 1907, and that is the amount of $32,933.45.

We are, therefore, of the opinion, and so find, that in the computation of its invested capital for the year here under consideration the asset for which $59,000 of stock was issued should be treated as having a value on the date on which it was paid in in the sum of $32,933.45.

Moneys received from the sale of an asset, the cost of which had been charged to expense, are properly included in income, and amounts received from the sale of machines, the cost of which has been entirely recovered by depreciation, are held to be gains and income under the rule of the *Appeal of Even Realty Co.*, 1 B. T. A. 355.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*